IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

RICARDO BALLS-RUIZ,

                       Plaintiff,

        vs.                               Civil Action No.
                                           6:04-CV-0022 (LEK/DEP)

JO ANNE B. BARNHART, Commissioner
of Social Security,

                       Defendant.

_____

APPEARANCES:                       OF COUNSEL:

FOR PLAINTIFF:

LEGAL AID SOCIETY OF          JOY M. SMITH, ESQ.
NORTHEASTERN NY -           MARGARET DRAKE, ESQ.
SARATOGA SPRINGS
10-12 Lake Avenue
Saratoga Springs, NY 12866

FOR DEFENDANT:

HON. GLENN T. SUDDABY     WILLIAM H. PEASE, ESQ.
United States Attorney for the    Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

OFFICE OF GENERAL COUNSEL    BARBARA L. SPIVAK, ESQ.
Social Security Administration    Chief Counsel, Region II
26 Federal Plaza
New York, NY 10278              KIMBERLY L. SCHIRO, ESQ.
                                   Assistant Regional Counsel

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>                              REPORT AND RECOMMENDATION</u>

Plaintiff Ricardo Balls-Ruiz, who suffers from a congenital condition which results in his bones being brittle and readily susceptible to fractures, has commenced this proceeding to challenge a determination by the Commissioner that he is not disabled and thus ineligible to receive Supplemental Security Income ("SSI") benefits under the Social Security Act (the "Act").  Plaintiff, whose SSI benefits resulting from a September, 1986 finding of disability were terminated upon his incarceration for slightly in excess of two years, contends that the Commissioner should have deferred to the earlier finding of disability, and that in any event the finding of no disability lacks the support of substantial evidence in the record and overlooks plaintiff's documented depression and testimony regarding his limitations.

Having carefully reviewed the record in light of plaintiff's arguments, I find that the Administrative Law Judge ("ALJ") whose finding of no disability led to rejection of plaintiff's claim for benefits failed to fully develop the record, despite requests from the claimant's counsel, and that his failure to do so constitutes a fundamental error requiring that the

resulting determination be reversed and the matter remanded for further consideration.

I.      BACKGROUND

Plaintiff was born on February 9, 1957; at the time of the hearing in this matter, plaintiff was forty-three years old.  Administrative Transcript at pp. 37, 103.[1]  Plaintiff was born in Puerto Rico, and came to live in the continental United States in approximately 1977.  AT 474.  Plaintiff attended school through the eleventh grade, where he spoke predominantly Spanish, learning English as a second language.  AT 272-73, 474, 476.  Plaintiff speaks fluent Spanish, but is limited in speaking and understanding English.  AT 476.  Plaintiff is not married and until shortly before the hearing lived in Albany, New York.  AT 34, 37.

Since childhood, plaintiff has suffered from osteogenesis imperfecta.[2]  AT 476-79.  According to information posted on the Osteogenesis Imperfecta Foundation website, the disease is a highly

_____

[1]      Portions of the administrative transcript, Dkt. No. 9, filed by the Commissioner together with her answer in this matter, will be cited as "AT __."

[2]      Osteogenesis imperfecta is a congenital disease which renders a victim highly susceptible to bone fractures.  AT 494.   The condition is described in one authoritative source as a collagen disorder generally characterized by brittle osteoporotic, easily fractured bones.  Dorland's Illustrated Medical Dictionary 1288 (29th ed. 2000).

variable disorder with signs and symptoms ranging from mild to severe, and generally results from "a faulty gene that instructs [victims'] bodies to make either *too little* type 1 collagen or *poor quality* type 1 collagen." www.oif.org/site/PageServer?pagename=DescOI (emphasis in original). Plaintiff's condition has resulted in his having suffered numerous broken bones, including a broken leg in or about 1998.  AT 43, 193, 474. According to the plaintiff, his condition causes him to lose his balance and fall when he is walking.  AT 45, 53.

Plaintiff's condition has been treated over the course of many years by medical professionals, principally at the Albany Medical Center, including Dr. Alan Carl and Dr. Marc Fuches, as well as by Dr. Dana Mears, who practices with The Orthopaedic Group in Albany, New York. Dr. Mears reported in November of 1999 that plaintiff had a history of osteogenesis imperfecta, with numerous fractures, and that some three to six years prior he had become aware of a change in the shape of his left patella, with some weakness in that knee.  AT 213.  Later, on June 21, 2000, Dr. Mears recorded that plaintiff has discomfort in the left knee and determined, based upon his clinical examination, that

> effectively he has a patella as a hypertrophic upper
> pole fragment, really is part of a non-union of his

> patella.  He does have a functional quadriceps
> mechanism however.  Radiographs confirm these
> changes in the left knee as well as a large mid
> shaft exostosis on the left femur of a sessile
> configuration.

AT 329.

Despite his problems, plaintiff presently takes is taking no

medication for pain.  AT 328.  Plaintiff testified that he is able – sometimes

with the assistance of his girlfriend – to shop, cook, and clean, as well as

to wash his clothes at a nearby laundromat.  AT 41-43.  Plaintiff is able to

walk fairly long distances, though he must stop every fifteen minutes in

light of the pain that results.  AT 43, 328; *see also* AT 209 (plaintiff reports

on November 8, 1999 having walked "several miles" prior to being

examined on that date).

Plaintiff has a documented and admitted history of heroin abuse.

Following his incarceration between July 3, 1997 and September 15, 1999

plaintiff was released on parole and later admitted into various

rehabilitation programs, including the Whole House, Conifer Park, and the

Carver Program to address his substance abuse issues.  AT 47-50.

Plaintiff's failure to attend one of those programs, however, resulted in his

reincarceration for violation of the conditions of his parole.  AT 48-49.

During the hearing plaintiff testified that his heroin habit endured until August of 2000, when he stopped using both drugs and alcohol. While using heroin, plaintiff stated, he purchased between one and two bags each day, at a cost of twenty-five dollars each, and acknowledged that the monthly expense associated with that habit was likely upwards of $750.  AT 46.

In addition to plaintiff's physical condition, there is indication in the record that at some point in the past he suffered from some degree of depression.  In a report prepared in August of 1986 by a psychiatrist at the Albany County Mental Health Clinic, plaintiff expressed feelings of depression and suicidal ideation.  AT 491.  Based upon that examination, the reporting psychiatrist diagnosed plaintiff as suffering from dysthymic disorder, and noted that atypical psychosis should be ruled out.  *Id.*  There is no indication, however, of any treatment of the plaintiff in later years, including after his release from prison, for depression or other related symptomology, and indeed on December 2002, Dr. Carl wrote that plaintiff "has osteogenesis imperfecta but no other medical problems."  AT 328. While at the hearing plaintiff attributed his heroin addiction to concern over his disease, *see* AT 52, and did not testify to suffering from or seeking

treatment for depression or any other mental condition.  When asked

during the hearing why he was unable to work, plaintiff referenced his

physical condition and the fear of falling and breaking bones, but did not

make mention of or attribute that circumstance to any mental condition.

*See* AT 45.

## II.   PROCEDURAL HISTORY

### A.    Proceedings Before The Agency

In September of 1986 an application filed by the plaintiff seeking SSI

benefits was approved.  AT 360.  As a result of that approval, plaintiff

received those benefits from in or about 1987 until 1997, when he was

incarcerated.  AT 20, 125.  During the period of his incarceration plaintiff's

benefits were initially suspended, and were later terminated after twelve

consecutive months of suspension.  *See* 20 C.F.R. § 416.1335.

Plaintiff filed a new application for SSI benefits on or about April 16,

1999, alleging a disability onset date of May 20, 1985.  AT 103-05.  That

application was denied, both initially and on reconsideration.  AT 58-62,

64-66.

At plaintiff's request, a hearing was conducted on November 14,

2000 before ALJ Robert Wright to address the denial of plaintiff's

application for SSI benefits.  *See* AT 29-57.  Following that hearing, at

which plaintiff was represented by counsel, ALJ Wright issued a decision

on February 23, 2001, upholding the denial of benefits.  AT 19-24.  In his

decision, ALJ Wright applied the familiar, five part test for evaluating

claims of disability under the Act.  Addressing step one, which examines

whether the plaintiff has engaged in substantial gainful activity during the

period of claimed disability ALJ Wright found, based upon plaintiff's

admission to having engaged in illegal activity in order to support his $750

per month drug habit until August of 2000, that he received income

sufficient to permit his drug purchases and thus was not disabled up until

that point in time; accordingly, the ALJ limited his focus to plaintiff's

condition during the period on and after September 1, 2000.[3]  AT 20.

Proceeding to step two of the analysis, the ALJ concluded that plaintiff's

osteogenesis imperfecta constituted an impairment of sufficient severity to

meet the test, but at step three concluded that it did not meet or equal any

---

      [3]     While it does not appear that this portion of the ALJ's finding was
significant, since there is no evidence of any material change in his condition between
the time of his application and the period after August of 2000, the ALJ's determination
that he was not disabled between the time of his release from prison and August, 2000
in light of the fact that unspecified, illegal activities generated income of at least $750
per month appears to be supported by substantial evidence, and is consistent with
Social Security Ruling ("SSR") 94-1C as well as established case law.  *See*, e.g.,
*Dotson v. Shalala*, 1 F.3d 571, 575-77 (7th Cir. 1993).

of the listed, presumptively disabling conditions set forth in the

regulations.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1.

ALJ Wright next examined the record and determined that plaintiff

has the residual functional capacity ("RFC") to perform a full range of light

work.[4]  After rejecting plaintiff's subjective testimony that he is able to lift

only up to ten pounds, based principally upon his ability to walk long

distances and the daily activities to which he engages, and finding that

plaintiff did not have any past relevant work, the ALJ applied his RFC

finding to the medical-vocational guidelines contained within the

regulations, 20 C.F.R. Pt. 404, Subpt. P, App.2 (the "grid"), and in

---

[4]     Light work is defined by regulations as follows:

> Light work involves lifting no more than 20
> pounds at a time with frequent lifting or
> carrying of objects weighing up to 10 pounds.
> Even though the weight lifted may be very
> little, a job is in this category when it requires
> a good deal of walking or standing, or when it
> involves sitting most of the time with some
> pushing and pulling of arm or leg controls.  To
> be considered capable of performing a full or
> wide range of light work, you must have the
> ability to do substantially all of these activities.
> If someone can do light work, we determine
> that he or she can also do sedentary work,
> unless there are additional limiting factors
> such as loss of fine dexterity or inability to sit
> for long periods of time.

20 C.F.R. § 404.1567(b).

particular rule 202.17 thereof, and concluded that a finding of no disability was warranted.  The ALJ's decision became a final determination of the agency when, on November 6, 2003 the Social Security Administration Appeals Council denied plaintiff's request for review.  AT 3-5.

      B.    <u>This Action</u>

Plaintiff commenced this action on January 8, 2004.  Dkt. No. 1. Issue was thereafter joined by the Commissioner's filing of an answer, accompanied by an administrative transcript of the proceedings before the agency, on May 17, 2004.  Dkt. Nos. 8, 9.  With the filing of plaintiff's brief on July 1, 2004, Dkt. No. 10, and that on behalf of the Commissioner on September 2, 2004, Dkt. No. 13, the matter is now ripe for determination, and has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. §§ 636(b)(1)(B) and Northern District of New York Local Rule 72.3(d).[5]  *See also* Fed. R. Civ. P. 72(b).

## III.   <u>DISCUSSION</u>

---

[5]     This matter has been treated in accordance with the procedures set forth in General Order No. 18 (formerly, General Order No. 43) which was issued by the Hon. Ralph W. Smith, Jr., Chief United States Magistrate Judge, on January 28, 1998, and amended and reissued by Chief District Judge Frederick J. Scullin, Jr., on September 19, 2001.  Under that General Order an action such as this is considered procedurally, once issue has been joined, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

A.    Scope of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the
Commissioner is limited; that review requires a determination of whether
the correct legal standards were applied, and whether the decision is
supported by substantial evidence.  *Veino v. Barnhart*, 312 F.3d 578, 586
(2d Cir. 2002); *Shaw v. Chater,* 221 F.3d 126, 131 (2d Cir. 2000); *Schaal
v. Apfel,* 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F.
Supp.2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*,
817 F.2d 983, 985 (2d Cir. 1987)).  Where there is reasonable doubt as to
whether the Commissioner applied the proper legal standards, her
decision should not be affirmed even though the ultimate conclusion
reached is arguably supported by substantial evidence.  *Martone*, 70 F.
Supp.2d at 148.  If, however, the correct legal standards have been
applied and the ALJ's findings are supported by substantial evidence,
those findings are conclusive, and the decision should withstand judicial
scrutiny regardless of whether the reviewing court might have reached a
contrary result if acting as the trier of fact.  *Veino*, 312 F.3d at 586;
*Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel*, 13
F. Supp.2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. §

-11-

405(g).

The term "substantial evidence" has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938)).  To be substantial, there must be "'more than a mere scintilla'" of evidence scattered throughout the administrative record.  *Id.*; *Martone*, 70 F. Supp.2d at 148 (citing *Richardson*).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 715 S. Ct. 456, 464 (1951)).

When a reviewing court concludes that incorrect legal standards have been applied, and/or that substantial evidence does not support the agency's determination, the agency's decision should be reversed.  42 U.S.C. § 405(g); *see Martone*, 70 F. Supp.2d at 148.  In such a case the court may remand the matter to the Commissioner under sentence four of

42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning.  *Martone*, 70 F. Supp.2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)).  A remand pursuant to sentence six of section 405(g) is warranted if new, non-cumulative evidence proffered to the district court should be considered at the agency level.  *See Lisa v. Secretary of Dep't of Health & Human Servs. of U.S.*, 940 F.2d 40, 43 (2d Cir. 1991).  Reversal without remand, while unusual, is appropriate when there is "persuasive proof of disability" in the record and it would serve no useful purpose to remand the matter for further proceedings before the agency.  *Parker*, 626 F.2d at 235; *Simmons v. United States R.R. Retirement Bd.*, 982 F.2d 49, 57 (2d Cir. 1992); *Carroll v. Secretary of Health & Human Servs.*, 705 F.2d 638, 644 (2d Cir. 1983).

>    B.    Disability Determination: The Five Step Evaluation Process

The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.] "  42 U.S.C. §

423(d)(1)(A).   In addition, the Act requires that a claimant's

> physical or mental impairment or impairments
> [must be] of such severity that he is not only
> unable to do his previous work but cannot,
> considering his age, education, and work
> experience, engage in any other kind of substantial
> gainful work which exists in the national economy,
> regardless of whether such work exists in the
> immediate area in which he lives, or whether a
> specific job vacancy exists for him, or whether he
> would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments which significantly restricts his or her physical or mental ability to perform basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.*

-14-

§§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled".  *Martone*, 70 F. Supp.2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If it is determined that it does, then as a final matter the agency must examine whether the claimant can do any other work.  *Id.* §§ 404.1520(f), 416.920(f).

The burden of showing that the claimant cannot perform past work lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584.  Once that burden has been met, however, it becomes incumbent upon the agency to prove that the claimant is capable of performing other work.  *Perez*, 77 F.3d at 46.  In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills.  *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp.2d at 150.

C.    The Evidence in this Case

-15-

In support of his challenge to the finding of no disability, plaintiff advances four basic arguments.  First, he maintains that the ALJ improperly rejected his subjective testimony regarding pain and the fears related to his disease.  Secondly, plaintiff argues that the ALJ's determination failed to take into account the earlier finding of disability and award of SSI benefits, which should have been considered as binding upon the agency.  Subsumed within that argument is plaintiff's contention that by his failure to acquire or replicate the agency's file regarding the plaintiff, covering the period from 1987 until 1997, the ALJ failed to properly develop the record.

The plaintiff next questions the light work RFC finding made by the ALJ as inconsistent with medical reports, particularly those generated prior to the period of his incarceration.  Lastly, the plaintiff questions the ALJ's failure to take into consideration the effects of his mental condition upon his ability to perform the full range of work associated with light work, thereby rendering resort to the grid inappropriate.

## 1.    Failure to Develop the Record

The record before the court reveals that following adjournment of the initial hearing date scheduled to address plaintiff's most recent application

for SSI benefits, at his request, plaintiff's counsel made three separate written requests for copies of the contents of his Social Security file pertaining to the period between 1987 and 1997.  AT 9; *see also* AT 25-26, 28.  On each occasion plaintiff received a response indicating that the file could not be located, and thus was unavailable.  AT 9, 27.  Plaintiff raised this issue both before the ALJ at the time of the hearing, and to the Social Security Administration Appeals Council.  *See* AT 8-13, 31-34. Plaintiff now argues that the failure of the ALJ to assist in locating and producing that file constitutes reversible error, fatally undermining the resulting finding of no disability.

By statute, an ALJ is duty bound not only to develop a claimant's complete medical history for at least twelve months prior to the filing of an application for benefits, "but also to gather such information for a longer period if there [is] reason to believe that the information [is] necessary to reach a decision."  *DeChirico v. Callahan*, 134 F.3d 1177, 1184 (2d Cir. 1998) (citing 42 U.S.C. § 423(d)(5)(B) as incorporated by 42 U.S.C. § 1382c(a)(3)(G) and 20 C.F.R. § 416.912(d)).  The applicable regulations supplement that requirement, directing that an ALJ subpoena a prior disability file pertaining to the claimant if deemed "reasonably necessary

-17-

for the full presentation of [the] case." *DeChirico*, 134 F.3d at 1184 (citing

20 C.F.R. § 416.1450(d)(1)).  While these obligations are particularly

critical in the case of a claimant who is unrepresented by counsel, *see*

*Mimms v. Heckler*, 750 F.2d 180, 185 (2d Cir. 1984), they also have

application in a case such as this, where the information sought was

specifically requested by plaintiff's counsel.  *Contrast DeChirico*, 34 F.3d

at 1184 (finding that ALJ did not abuse his discretion in failing to

subpoena prior file since fact of plaintiff's impairment was not in dispute

and counsel offered no basis to conclude that the former file would be

relevant).

     "The existence of a prior established disability is highly relevant

when the nature of that disability appears to be the very same cause of

the alleged disability . . . under examination." *Mimms*, 750 F.2d at 185;

*see also DeChirico*, 134 F.3d at 1183-84.  In this instance plaintiff's prior

disability file likely contains critically relevant information which would shed

light on his physical and mental condition and permit comparisons of

plaintiff's symptoms and limitations from before his incarceration, when he

was deemed to be disabled, and at the times relevant to the instant

application.  In light of the fact that the ALJ declined to assist the claimant

and his attorney in their efforts to locate and obtain the prior file, or to regather pertinent records from the 1987-1997 time period, I conclude that the ALJ failed to fulfill his obligation to fully develop the record.[6]

Because "[t]he statutory duty of an ALJ to issue subpoenas or take other actions *sua sponte* as necessary to develop the record applies, of course, to all claimants, and not just those who appear *pro se*," *DeCherico*, 134 F.3d at 1184 (internal citations omitted), and since several of the other arguments now raised by plaintiff in support of his challenge to the finding of no disability cannot fully be evaluated without the benefit of the missing records, I recommend a finding that the ALJ's determination should be reversed, and the matter remanded with instructions to assist in obtaining or replicating the prior disability file, and thereafter considering the resulting additional evidence and the prior finding of disability in deciding the pending application for benefits.

IV.   <u>SUMMARY AND RECOMMENDATION</u>

---

[6]      In his appeal, plaintiff has not argued that his medical records pertaining to the period of his incarceration should have been subpoenaed from the New York Department of Correctional Services ("DOCS").  While plaintiff was not entitled to receive Social Security benefits while incarcerated, records reflecting his condition during that time period are potentially relevant to his limitations during the relevant, post-incarceration period.  On remand, the agency is therefore urged to make effort to acquire records of plaintiff's medical history while in custody of the DOCS.

Critically material evidence bearing upon the question of disability, in the form the contents of a file associated with a prior finding of disability and award of SSI benefits, was not sought and obtained by the ALJ in this matter despite repeated requests on behalf of the plaintiff for that file. Because the contents of the requested file are highly relevant to the issue of disability in this matter, and neither the finding of no disability nor plaintiff's arguments in support of his challenge to that determination can be fully evaluated without access to the complete records associated with the 1987-1997 time period, I recommend a finding that the ALJ's failure to develop the record warrants reversal of the Commissioner's determination and a remand of the matter to the agency for further proceedings.

Based upon the foregoing it is hereby

RECOMMENDED that plaintiff's motion for judgment on the pleadings be GRANTED, the Commissioner's finding of no disability VACATED, and the matter REMANDED to the agency for further proceedings consistent with this opinion.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court within ten (10) days.  FAILURE TO SO OBJECT TO

THIS REPORT WILL PRECLUDE APPELLATE REVIEW.   28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roland v. Racette*, 984 F.2d 85

(2d Cir. 1993).

IT IS FURTHER ORDERED, that the Clerk of the Court serve a copy

of this Report and Recommendation upon the parties by regular mail.


Dated:      January 25, 2006                     David E. Peebles
            Syracuse, NY                          U.S. Magistrate Judge


G:\socialsecurity\balls-ruiz.wpd

-21-